

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF BROOMFIELD, COLORADO<br>Broomfield Combined Courts<br>17 Descombes Dr.<br>Broomfield, Colorado 80020 | DATE FILED: July 1, 2020 5:10 PM<br>FILING ID: 5CE07385A9C28<br>CASE NUMBER: 2020CV30203 |
| Plaintiff:<br>AMANDA LESTER<br><br>Defendants:<br>APPEXTREMES, LLC, d/b/a CONGA, a Delaware limited liability company; and<br>APTTUS CORPORATION, d/b/a CONGA, a Delaware corporation. | **COURT USE ONLY** |
| Attorneys for: **Plaintiff Amanda Lester**<br><br>Name:     Charlotte N. Sweeney, #26274<br>              Jennifer M. Kinkade, #53885<br>              SWEENEY & BECHTOLD, LLC<br>Address:  650 S. Cherry Street, Suite 700<br>              Denver, Colorado 80246<br>Phone Number: (303) 865-3733<br>Facsimile:     (303) 865-3738<br>E-mail:         cnsweeney@sweeneybechtold.com<br>                 jmkinkade@sweeneybechtold.com | Case Number:<br><br><br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Amanda Lester, by and through her attorneys, for her Complaint against Defendants AppExtremes, LLC, d/b/a Conga and Apttus Corporation, d/b/a Conga (collectively "Conga") state and allege as follows:

## I.   INTRODUCTION

1. This action arises from Conga's fraudulent misrepresentations made to Plaintiff Amanda Lester regarding the terms of her employment and the breach of oral promises made to Plaintiff Lester.

## II.   PARTIES

2. Plaintiff Lester is a citizen of the State of Texas and a former employee of Defendant Conga.

3. Defendant AppExtremes, LLC is a Delaware limited liability company, having its principal place of business in the City and County of Broomfield.

4. Defendant AppExtremes, LLC is the registrant of Conga's trade name with the Colorado Secretary of State.

5. Defendant Apttus Corporation is a Delaware corporation, having its principal place of business in the City and County of San Mateo, California and its registered agent in Littleton, Colorado.

6. Defendant Apttus Corporation merged with, or acquired, Defendant Conga in May 2020.

## III.   JURISDICTION AND VENUE

7. Jurisdiction is proper as Defendant Conga operates in the state of Colorado, and because jurisdiction of the District Court is conferred by the Constitution of the State of Colorado, Article VI, Section 9.

8. Venue is proper before this Court pursuant to C.R.C.P. 98(c).

## IV. GENERAL ALLEGATIONS

9. Plaintiff Lester was hired by Conga's predecessor, Octiv, as a Marketing Communications Specialist in June 2012.

10. Conga signed a letter of intent to inquire Octiv in March 2018.

11. On or about March 16, 2018, Conga's Chief Technology Officer and Chief Product Officer, Doug Rybacki, and then-Vice President of Product Marketing, Will Spendlove, flew to Octiv's headquarters in Indianapolis.

12. While they were visiting headquarters, Mr. Rybacki and Mr. Spendlove had a discussion with Plaintiff Lester to ask whether she would consider remaining employed with Conga following its acquisition of Octiv.

13.     By this time, Plaintiff Lester was in the process of applying for multiple full-time Masters in Business Administration (MBA) programs at universities across the country.

14.     The MBA programs to which Plaintiff Lester was applying were scheduled to begin in August 2018.

15.     Mr. Rybacki and Mr. Spendlove informed Plaintiff Lester during their March 2018 conversation that they were aware she was applying to these programs.

16.     While they were supportive of her plans, Mr. Rybacki told Plaintiff Lester that she should consider applying to part-time programs so that she could work for Conga while she was in school.

17.     On April 3-4, 2018, Conga announced its intent to acquire Octiv to employees at Conga Connect, the company's annual customer conference.

18.     On April 5 or 6, 2018, Plaintiff Lester met again with Mr. Rybacki and Mr. Spendlove.

19.     During this meeting, Plaintiff Lester reiterated her intention to attend an MBA program that fall.

20.     In response, Mr. Rybacki asked her to consider a part-time MBA program.

21.     Mr. Rybacki also told Plaintiff Lester that he had completed his MBA while working full-time, but that a part-time program provided an excellent opportunity to apply coursework to the job Ms. Lester would be in with Conga.

22.     During the Conga Connect conference, Mason White, Head of Product Strategy, encouraged Plaintiff Lester to complete the MIT Sloan Artificial Intelligence: Implications for Business Strategy online course, which he told her would prepare her to launch Conga's Artificial Intelligence (AI) product.

23.     Mr. White told Plaintiff Lester that Conga would reimburse her for the cost of the MIT course, which was $3,200.00.

24.     On April 13, 2018, Conga officially acquired Octiv.

25.     On June 1, 2018, Plaintiff Lester was accepted into the two-year full-time MBA program at Notre Dame.

26.     Plaintiff Lester's acceptance letter indicated she would receive a $20,000 scholarship for each year of the program, and that the total tuition costs would amount to $112,676.

27.     Based on Mr. Rybacki and Mr. Spendlove's representations that she should take a part-time program instead, Ms. Lester requested a one-year deferral on June 5, 2018, which Notre-Dame granted.

28. In August 2018, Sienna Quirk, one of the two Directors of Product Marketing, left Conga and Plaintiff Lester assumed her responsibilities for the Contract Lifecycle Management ("CLM") product line.

29. Plaintiff Lester's performance evaluations remained overwhelmingly positive, despite the fact that she had taken on additional job duties, including meeting with various departments and developing go-to-market strategies for Conga's sales teams to market the CLM product line.

30. Relying on Mr. White's representation that Conga would reimburse her for the cost of the MIT course he recommended, Plaintiff Lester obtained Mr. Spendlove's approval to take the course.

31. Plaintiff Lester completed the MIT course by September 2018.

32. When Plaintiff Lester submitted the receipt for the course to Conga's accounting department, it informed her that she would not be reimbursed, contrary to Mr. White's assertion and Mr. Spendlove's approval.

33. In March 2019, Plaintiff Lester took on additional job responsibilities that she inherited from Karen Cooper, the second Director of Product Marketing, when Ms. Cooper left the company.

34. Plaintiff Lester took charge of the flagship Document Generation product line, including Conga Composer, Conga Batch, Conga Trigger, and Conga Collaborate.

35. Conga Composer was a particularly important product in Conga's business model, as it generated the majority of Conga's annual sales.

36. Additionally, Plaintiff Lester created and updated essential marketing and selling materials for Conga as part of her newly inherited job duties. Namely, Plaintiff Lester led industry analyst relations, earning placement in evaluations from top industry analysts, and introduced new pricing and packaging initiatives, which led to 20% faster sales cycles and doubled the win rate.

37. Due to her outstanding performance, Plaintiff Lester was promoted on April 11, 2019 to Senior Product Marketing Manager.

38. During her meeting with Mr. Spendlove where he informed her of her promotion, they discussed Plaintiff Lester's future at Conga.

39. Once again, Plaintiff Lester made her intention to pursue her MBA clear to Mr. Spendlove.

40. Mr. Spendlove repeated his recommendation that Plaintiff Lester instead look into part-time MBA programs so that she could complete her degree on a part-time basis while working full-time for Conga.

4

41. Plaintiff Lester researched the Executive MBA ("EMBA") program at Notre Dame, which would allow her to complete her degree on a part-time basis while working full time at Conga.

42. The EMBA program was designed as a part-time program that was specifically allowed for individuals to work full-time in addition to taking courses.

43. Plaintiff Lester informed Mr. Spendlove that, among the requirements for enrollment in the EMBA program, Plaintiff Lester would need to be employed full-time and would require company sponsorship and letters of recommendation from her employer.

44. Conga's Human Resources department reviewed the requirements and submitted a Statement of Support to Plaintiff Lester on May 6, 2019.

45. In addition, Mr. Rybacki and Mr. Spendlove wrote letters of recommendation for Plaintiff Lester's application to the Notre Dame EMBA program.

46. On June 11, 2019, Plaintiff Lester was accepted into Notre Dame's EMBA program.

47. While she received a scholarship for the EMBA, it was significantly smaller than the scholarship she was offered for the regular MBA program.

48. The scholarship offered for the EMBA was for $25,000, with a total tuition cost of $133,515.

49. Plaintiff Lester confirmed her acceptance in to the EMBA program and enrolled on June 12, 2019.

50. Around this same time, Mr. Spendlove and Conga's HR department approved Plaintiff Lester's relocation from Indianapolis to Boulder, Colorado to work out of the company's headquarters in Broomfield.

51. On August 29, 2019, Mr. Spendlove left the company.

52. Maureen West became Plaintiff Lester's supervisor upon Mr. Spendlove's departure on August 30, 2019.

53. The following day, August 31, Plaintiff Lester moved from Indianapolis to Colorado.

54. Plaintiff Lester's move was advantageous to Conga's sales team, product team, engineering, and marketing team, which were all located in Colorado and with whom Plaintiff Lester was in constant collaboration with as part of her essential job duties.

55. Ms. West met with Plaintiff Lester on October 29, 2019 and told her that her participation in the EMBA program was not of any value to Conga and insinuated that the program was hindering Plaintiff Lester's performance.

56. Contrary to Ms. West's assertions, Plaintiff Lester had continued performing as well as she had prior to Ms. West becoming her supervisor.

57. When Plaintiff Lester sought specific examples of how her performance was allegedly insufficient, Ms. West's only advice was to direct Plaintiff Lester to google a Senior Product Marketing Manager job description for guidance.

58. Plaintiff Lester informed Mary Ryan, Conga's HR Operations Specialist and Executive Assistant to the CMO, of her interaction with Ms. West on October 31, 2019.

59. Ms. Ryan told Plaintiff Lester that she, herself, had concerns with the criteria Ms. West relied upon to assess Plaintiff Lester's performance, because of the subjective and immeasurable standards Ms. West imposed and recommended Plaintiff Lester speak to Manager of HR Operations and Culture, Joanne Biggar, about the matter.

60. Ms. Ryan suggested Plaintiff Lester follow up with Ms. West in a couple weeks to see if Ms. West's opinions of Plaintiff Lester's performance had changed.

61. On November 21, 2019, Plaintiff Lester and Ms. West met again.

62. During this meeting, Ms. West again claimed that Plaintiff Lester's participation in the EMBA program was negatively impacting Plaintiff Lester's performance.

63. Ms. West did not specify why she felt that the EMBA program was hindering Plaintiff Lester's performance and she continued to heavily scrutinize Plaintiff Lester without basis.

64. Plaintiff Lester asked for clarification from Ms. West regarding her expectations and why Plaintiff Lester was not meeting them. However, Ms. West was unable to provide specific examples of performance issues.

65. On December 4, 2019, Ms. West told Plaintiff Lester that she was not the right fit for the company and that Ms. West intended to contact HR in order to find Plaintiff Lester a different position that would fit her skillsets.

66. Plaintiff Lester asked Ms. Ryan and Ms. Biggar if she was being terminated.

67. Ms. Ryan and Ms. Biggar confirmed Plaintiff Lester was not being fired, despite Ms. West's thinly veiled threats at ending Plaintiff Lester's career with Conga.

68. On January 15, 2020, Ms. West called Plaintiff Lester and briefly informed her that she made the decision to terminate Plaintiff Lester, effective immediately.

69. Ms. Biggar met with Plaintiff Lester after the phone call and reiterated Ms. West's position that Plaintiff Lester was not a good fit for the company and confirmed Plaintiff Lester was terminated.

70. During her conversation with Ms. Biggar, Plaintiff Lester reminded her that she not only moved across the country for this position, but also that she had declined enrollment in the much-cheaper full-time MBA program and pursued the EMBA program at the bequest of Mr. Rybacki and Mr. Spendlove.

71. Plaintiff Lester also reminded Ms. Biggar that her attendance in the EMBA program required she be employed full-time and have employer sponsorship.

72. Ms. Biggar dismissed Plaintiff Lester's concerns and proceeded to review a termination packet with Plaintiff Lester, telling her that she would "see what [she] could do" about the EMBA program.

73. Ultimately, nothing was done to compensate Plaintiff Lester for her reasonable reliance on the company's assurances that it would sponsor her and maintain her employment during the EMBA program.

## V.   STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
Negligent Misrepresentation Against Defendants

73. The foregoing allegations are realleged and incorporated by reference.

74. Acting on behalf of Conga, Defendants' agents supplied Plaintiff Lester with false information regarding Conga's intent to 1) maintain Plaintiff Lester's employment through the duration of her EMBA program, and 2) reimburse her for the cost of the MIT course.

75. Defendants' agents made false representations to Plaintiff Lester in the course of Conga's business.

76. Defendants' agents gave the information to Plaintiff Lester for the use or guidance of Plaintiff in deciding to pursue the MIT course, the EMBA program, and to continue working for Conga.

77. Defendants' agents failed to exercise reasonable care or competence in communicating the information to Plaintiff Lester.

78. Plaintiff Lester justifiably relied on Defendants' agents' representations.

79. As a proximate result of Defendants' misrepresentations, Plaintiff Lester suffered pecuniary losses, including loss of wages and benefits, loss of tuition and costs, moving expenses, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

## SECOND CLAIM FOR RELIEF
Fraudulent Misrepresentation Against Defendants

78. The foregoing allegations are realleged and incorporated by reference.

80. Acting on behalf of Conga, Defendants' agents made false representations of material facts to Plaintiff Lester regarding Conga's intent to 1) maintain Plaintiff Lester's employment through the duration of her EMBA program, and 2) reimburse her for the cost of the MIT course.

79. At the time they made the representations, Defendants' agents either knew the representations were false or were aware that they did not know whether the representations were true or false.

80. The representations induced Plaintiff Lester to continue to work for Conga.

81. Defendants' agents intended for Plaintiff Lester to act and/or rely upon their representations.

82. Plaintiff Lester justifiably relied upon the information that was provided to her by Defendants' agents by continuing to work for Conga, pursuing a different degree than what she originally intended because it would be helpful to her position at Conga, and otherwise utilizing her expertise to the benefit of Conga.

83. As a direct and proximate result of such false representations, Plaintiff Lester has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

## THIRD CLAIM FOR RELIEF
Promissory Estoppel Against Defendants

84. The foregoing allegations are realleged and incorporated by reference.

85. On behalf of Conga, Defendants' agents promised Conga's intent to 1) maintain Plaintiff Lester's employment through the duration of her EMBA program, and 2) reimburse her for the cost of the MIT course.

86. Defendants' agents should reasonably have expected Plaintiff Lester to act and/or rely on Defendants' agents' promises.

87. Plaintiff Lester reasonably relied on these promises to her detriment.

88. Injustice can be avoided only by enforcement of Defendants' promises.

89.     As a direct and proximate result of Conga's failure to uphold the promise, Plaintiff Lester has suffered and continues to suffer damages equal to her loss of wages and benefits.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff Amanda Lester demands judgment in her favor and against Defendants for:

   a. Back pay and benefits;

   b. Front pay and benefits;

   c. Moving costs and expenses;

   d. Injunctive and declaratory relief;

   e. Other appropriate equitable relief;

   f. Prejudgment and post-judgment interest;

   g. Costs;

   h. Such other relief as the Court deems proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.**

Dated: July 1, 2020.

SWEENEY & BECHTOLD, LLC

*/s/ Jennifer M. Kinkade*
**Attorney for Plaintiff**

Plaintiffs' Addresses:
Amanda Lester
9924 Hathaway St.
Dallas, TX 75220

*Pursuant to C.R.C.P 121, § 1-26, a printed or printable copy this document with original or scanned signatures is maintained by the filing party and will be made available for inspection by other parties or the court upon request.*